AMERICAN STRUCTURAL
COMPOSITES, INC.,
Plaintiff—Appellant,

v.

ICBO EVALUATION SERVICES, INC.;
International Conference of Building
Officials; Resources, Applications,
Designs & Controls, Inc., Defendants—Appellees.

No. 05–15817.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 12, 2007.*

Filed Feb. 14, 2007.

Bradley L. Booke, Esq., Moriarity Gooch Badaruddin & Booke, Las Vegas, NV, for Plaintiff–Appellant.

Alfred C. Pfeiffer, Jr., Brian C. Rocca, Bingham McCutchen, LLP, San Francisco,

---

* This panel unanimously finds this case suitable for decision without oral argument. *See*   Fed. R.App. P. 34(a)(2).

CA, Robert A. Dotson, Laxalt & Normura, Ltd., Reno, NV, for Defendants–Appellees.

Before: WALLACE, D.W. NELSON, and McKEOWN, Circuit Judges.

MEMORANDUM **

American Structural Composites, Inc. (ASC) appeals from the district court's summary judgment in favor of International Conference of Building Officials (ICBO) and ICBO Evaluations Services, Inc. (ICBO–ES). We have jurisdiction under 12 U.S.C. § 1291, and we affirm.

## I.

■ ASC first contends that a release clause in the ICBO–ES's preprinted form application (Application) is unenforceable because it violates California public policy. Paragraph 12.f. of the Application provides:

Applicant agrees that it shall have no cause of action or claim against ICBO ES or its parent corporation, the International Conference of Building Officials, Inc., or the officers, directors, members and employees of either entity from time to time arising out of any evaluation report or listing issued pursuant to this application, whether or not such evaluation report or listing is subject to conditions, or out of any denial of this application.

California law governs the release clause due to a choice-of-law provision in the Application. Under California law, "All con-

tracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Cal. Civ.Code § 1668. The California courts, including the State Supreme Court, have interpreted the provision to permit contractual exculpatory provisions so long as they do "not involve 'the public interest.'" *Tunkl v. Regents of Univ. of Cal.*, 60 Cal.2d 92, 96, 32 Cal.Rptr. 33, 383 P.2d 441 (1963).

To determine whether a transaction is within the public interest, and therefore whether any exculpatory clause implicated by the transaction is void, the transaction must exhibit all or most of a list of characteristics set forth in *Tunkl*. *Rooz v. Kimmel*, 55 Cal.App.4th 573, 589, 64 Cal. Rptr.2d 177 (1997). Among these are (1) that the transaction "concerns a business of a type generally thought suitable for public regulation"; (2) that "[t]he party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public"; and (3) that "the party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards." *Tunkl*, 60 Cal.2d at 98–99, 32 Cal.Rptr. 33, 383 P.2d 441 (footnotes omitted).

The district court properly determined that these three characteristics are absent in this case. "The public regulation factor," stated the district court,

is satisfied if the contract modifies "the responsibilities normally attaching to a relationship which has been regarded in

---

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

other connections as a fit subject for special regulatory treatment." [*Tunkl,* 60 Cal.2d at 98, 32 Cal.Rptr. 33, 383 P.2d 441] n. 9. ASC concedes that the relationship between ICBO–ES and applicants for certification is not subject to regulation or governmental oversight of any kind. Concerning the second factor, the *Tunkl* court referred to restaurants and railroads as examples of services "of great importance to the public," and *Tunkl* involved a hospital. *Id.* at n. 9–10. The *Tunkl* court "clearly had in mind medical, legal, housing, transportation, or similar services which must necessarily be utilized by the general public." *Hulsey v. Elsinore Parachute Center,* [168 Cal.App.3d 333] 214 Cal.Rptr. 194, 199 (1985). By contrast, the certification of construction products is a relatively narrow field which is used by select private companies rather than the general public, and is qualitatively different from the services cited in *Hulsey.* With respect to the third *Tunkl* factor, California courts have distinguished between providing services to the general public and providing service only to specialized commercial entities. *Appalachian Ins. Co. [v]. McDonnell Douglas Corp.,* [214 Cal.App.3d 1] 262 Cal.Rptr. 716, 732 (1989). In this sense, the service provided by ICBO–ES is not available to the general public.

Because we agree with the district court that the transaction here does not exhibit these three *Tunkl* characteristics, we affirm the district court's holding that the release is enforceable.

## II.

■ We must therefore determine whether the Application was denied, triggering the release clause. ASC argues that while ICBO–ES did not issue a report, ICBO–ES never "denied" the Application. The district court rejected this argument. So do we.

Under California law, the interpretation of a contract presents a question of law for this court to determine. *See Miscione v. Barton Dev. Co.,* 52 Cal.App.4th 1320, 1325, 61 Cal.Rptr.2d 280 (1997). "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." Cal. Civ.Code § 1644. Since neither party contends, nor is it otherwise apparent, that the parties adopted a technical or special definition of the term "denial," the term must be interpreted in its "ordinary and popular sense." In this sense, the word "denial" means "[a] refusal to comply with or satisfy a request." *See* "denial." *The American Heritage® Dictionary of the English Language, Fourth Edition.* Houghton Mifflin Co., http://dictionary.reference.com/browse /denial (last accessed Jan. 5, 2007).

ICBO–ES issued a series of written notices to ASC indicating that ICBO–ES would not approve ASC's product unless ASC furnished additional information concerning the product's features. Because ASC did not furnish all necessary information, the certification was never issued. We hold that these notices constituted "denials"—that is, refusals to satisfy ASC's request that ICBO–ES approve its application. In our view, these denials trigger the release clause.

Because all of ASC's claims arise from these denials, the claims are barred by the release clause.

## III.

ASC argues that the ICBO's appeal and arbitration provisions are unconscionable

and unenforceable under California law. Regardless of whether these provisions are enforceable, the release clause certainly is. We therefore need not address ASC's appeal/arbitration provisions argument.

The district court's summary judgment in favor of ICBO and ICBO–ES is therefore

**AFFIRMED.**

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.